[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
SEPTEMBER 15, 2006
THOMAS K. KAHN
CLERK

No. 05-12416
Non-Argument Calendar

_____

D. C. Docket No. 04-20367-CR-PAS

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

JERRY SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

**(September 15, 2006)**

Before BLACK, BARKETT and KRAVITCH, Circuit Judges.

PER CURIAM:

Jerry Smith was convicted by a jury for possession of a firearm by a

convicted felon, in violation of 18 U.S.C. § 922(g).[1]  Smith appeals his conviction

and sentence, arguing that the district court erred by: (1) denying his motion to

suppress physical evidence allegedly obtained in violation of the Fourth

Amendment; (2) not allowing him to call a state's attorney as a witness to testify as

to why the state decided not to prosecute him; (3) denying his motions for

judgment of acquittal; and (4) sentencing him as an Armed Career Criminal.  For

the reasons that follow, we affirm.

## I. Background

At the hearing on Smith's motion to suppress, testimony reflected that on

January 1, 2004, Officer Alton Martin of the Miami-Dade Police Department drove

through the parking lot of a Motel 7 when a particular car caught his attention

because it was parked directly in front of room 133 and not in an actual parking

space, and it was unoccupied, unlocked and had the windows rolled down.  Martin

suspected that the car may have been stolen because, in addition to the manner in

which it was left, it had an altered, or otherwise improper, temporary license tag.

Martin went to room 133 to ascertain if anyone in that room knew the owner

of the vehicle.  He knocked and announced.  When Smith opened the door, Martin

detected marijuana smoke and observed a woman standing behind Smith.

---

[1] Smith's indictment also included a forfeiture count, though the government ultimately dismissed that charge.

Martin asked Smith if he knew the owner of the vehicle parked in front of the room, and Smith stated that it belonged to the woman standing behind him, who confirmed that the vehicle was hers. Martin asked Smith and the woman for their names and birth dates. Then, using his hand-held radio, Martin asked his dispatcher to run a check on the information Smith and the woman had provided.

Martin asked Smith whether he had been smoking marijuana; Smith admitted to having smoked marijuana and indicated that there was only a small amount left in the room. Martin then asked if there was anything else in the room that he should be concerned about, such as weapons, and Smith said no.

Martin's dispatcher advised him that there was an outstanding warrant for Smith, and Martin requested backup. Smith did not hear what the dispatcher had said. As Martin waited for backup to arrive, Smith asked if he could use the bathroom and put on a pair of pants. Martin allowed Smith to do so, but the officer entered the motel room and accompanied Smith while he performed both tasks.

When Martin's partner arrived, Martin requested that Smith come to the doorway and asked Smith for permission to search the room, which Smith granted. Martin searched the room, finding some marijuana and, between the mattress and the box spring of the bed, a firearm. Martin then arrested Smith.

Martin described his conversation with Smith as "conversational" and "not

3

unpleasant." Martin observed that Smith seemed "a little high" but did not appear to be impaired in any way. Another police officer determined that Smith had rented the motel room in which the marijuana and firearm had been found.

Smith filed a motion to suppress, alleging that none of the exceptions to the warrant requirement applied to Martin's warrantless search. Smith argued that the evidence should be suppressed because he did not freely and voluntarily consent. Specifically, Smith asserted that he did not provide valid consent because: (1) he had been under the influence of marijuana; (2) Martin did not discuss the details of the potential search, inform Smith of his right to refuse consent or provide Smith with a written consent to search form; and (3) Smith was in custody and had not been provided with Miranda warnings at the time Martin sought his consent.

The magistrate judge recommended that Smith's motion to suppress be denied because Smith was competent enough to understand what he was being asked and to give his consent to the search, despite his use of marijuana. The district court adopted the magistrate judge's recommendations, finding that, in light of the totality of the circumstances, Smith had been competent to consent to the search and had otherwise provided valid consent.

Smith submitted his witness list for trial, indicating his intent to call an assistant state's attorney from the Miami-Dade County State Attorney's office.

4

The government responded with a motion in limine asking the court to prohibit Smith from mentioning, either in argument or testimony, that the state charges arising from the foregoing events had been "no actioned, dismissed, or declined for prosecution by the Office of the State Attorney." Smith responded that the state's attorney's screening of the case and the directions given by the state's attorney to the officer involved in the case were highly relevant to his defense. He argued that the quality of the police investigation was a key factor in the jury's determination of his guilt and that the state's attorney's testimony would be helpful to the jury. The district court determined that the state's decision not to prosecute Smith was not relevant to whether Smith possessed a firearm, that the state's attorney's testimony would be inadmissible hearsay for which there was no exception under the rules of evidence and that it would confuse and mislead the jury.

At trial, Martin provided testimony consistent with the above facts. In addition, Favona Boston, the woman who had been with Smith in the motel room, testified that she had lived with Smith in the room for a week or two and that during that period she had seen Smith with a firearm. She testified that Smith would carry the firearm to work and, upon returning home, would place the firearm under the bed. Boston testified that Martin had been polite and courteous, that he had not drawn his weapon, and that Smith consented to the search. Boston

5

identified the firearm seized from the motel room as that belonging to Smith.

Smith stipulated to the fact that prior to his indictment in the instant case, he had been convicted of a felony, and he never applied for nor received a restoration of his federal firearms privilege. An agent with the Bureau of Alcohol, Tobacco and Firearms testified that the firearm had traveled in interstate commerce.

Smith moved for a judgment of acquittal at the close of the government's case, contending that the government had not proved all elements of the offense, particularly the element of possession. Smith argued that the government had proved neither actual nor constructive possession of the firearm. Specifically, Smith argued that only Boston's testimony had connected him to the firearm and that her testimony had been impeached. The court denied Smith's motion, finding that there was sufficient evidence to warrant sending the case to the jury. Smith renewed his motion for judgment of acquittal at the close of all the evidence, and the court again denied his motion. The jury found Smith guilty.

The presentence investigation report ("PSI") gave Smith a base offense level of 24. As Smith qualified as an armed career criminal under 18 U.S.C. § 924(e), however, his offense level was increased to 33 pursuant to U.S.S.G. § 4B1.4(b)(3). Smith's prior convictions include: (1) 1988 convictions for racketeering, conspiracy to commit racketeering, and conspiracy to traffic in illegal drugs; (2)

1993 convictions for possession and sale of cocaine; and (3) 1998 convictions for second degree murder with a firearm, armed burglary, and robbery using a firearm. Given his criminal history category of VI and his offense level, Smith's guideline range was 235-293 months' imprisonment. Among other things, Smith objected to being classified as an armed career criminal and asserted that the PSI did not identify which convictions were used to determine that § 924(e) applied.

At Smith's sentencing hearing, the court indicated that the government was relying on the three prior convictions set forth above to establish the applicability of § 924(e). Smith did not object to the government's reliance on the second degree murder charge but objected to the government's classification of the 1993 conviction as involving a serious drug offense, arguing that he had received only a sentence of probation. Smith also objected to the government's use of the 1988 conviction, as he had been a youthful offender at that time. The district court found, as a matter of law, that in 1992, the sale or delivery of cocaine in Florida was a second degree felony, punishable by a term of up to 15 years' imprisonment and that, therefore, Smith's 1993 conviction was for a serious drug offense under § 924(e). Accordingly, the court found that Smith's three convictions qualified him as an armed career offender and sentenced him to 235 months' imprisonment.

## II. Discussion

Motion to Suppress

On appeal, Smith argues that his consent to the search was obtained through coercion and that, therefore, the district court erred in denying his motion to suppress. Smith contends that he was in police custody, or the equivalent of police custody, at the time Martin requested permission to search the motel room. Smith argues that the fact that he required the officer's permission to use the restroom and to put on his pants demonstrates that Smith did not feel free to terminate the encounter. Smith further contends that during the search, he was placed in handcuffs[2] and made to wait outside of the motel room.

"The denial of a motion to suppress presents a mixed question of law and fact." United States v. Barbour, 70 F.3d 580, 584 (11th Cir. 1995). In determining whether consent to search was voluntary, we defer to the district court's findings of fact unless clearly erroneous, and we review the court's application of law to the facts de novo. Id.

The Fourth Amendment protects an individual's reasonable expectation of privacy in his motel room. See Stoner v. California, 376 U.S. 483, 490 (1964). Nevertheless, police may conduct a warrantless search of the motel room so long

_____

[2] Martin's testimony at the suppression hearing indicates that Smith was not placed in handcuffs until after Martin searched the motel room and found the firearm.

as the occupant voluntarily consents.  United States v. Butler, 102 F.3d 1191, 1197 (11th Cir. 1997).  "The question of voluntariness is one of fact to be determined from the totality of the circumstances, and the trial court's voluntariness determination must not be reversed unless clearly erroneous."  United States v. Ramirez-Chilel, 289 F.3d 744, 752 (11th Cir. 2002) (quotation and citation omitted).  To determine whether consent was given voluntarily, we consider: (1) whether the defendant was free to leave; (2) whether coercive police procedures were employed; (3) the extent of the defendant's cooperation or awareness of a right to refuse consent; (4) whether the defendant could refuse to consent; (5) the extent of the defendant's education and intelligence; and (6) the defendant's belief that no incriminating evidence would be found.  Id.

The fact of custody does not necessarily vitiate the defendant's valid consent to a search.  See United States v. Jones, 475 F.2d 723, 730 (5th Cir. 1973).[3] Because "[i]n any arrest there is present a degree of duress, . . . [t]he question is whether the officers used coercive tactics or took unlawful advantage of the arrest situation to obtain consent."  Id.  "[T]he absence of intimidation, threats, abuse (physical or psychological), or other coercion is a circumstance weighing in favor of upholding what appears to be a voluntary consent."  Id.

---

[3] In Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), we adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981.

The record indicates that Martin did not attempt to coerce or intimidate Smith into consenting to the search. On the contrary, Martin and Smith's interaction appears to have been polite and cooperative. Nor did Martin misrepresent the situation to Smith. Moreover, Smith appears to have understood what was happening; it does not appear that he was impaired during the encounter. Finally, Smith was not asked to step outside the motel room or to sit in the patrol car until after he had consented to the search. Thus, in light of the totality of the circumstances, the district court did not err in denying Smith's motion to suppress.

State's Attorney as Witness

Smith next argues that the district erred by prohibiting him from calling a state's attorney as a witness because that prevented him from presenting the defense of his choice. Smith contends that the state's attorney's testimony may have been relevant depending on the reason the state chose not to prosecute him.

We review evidentiary decisions for an abuse of discretion. United States v. Brown, 415 F.3d 1257, 1264-65 (11th Cir. 2005), cert. denied, 126 S.Ct. 1570 (2006) (quotation and citation omitted).

Evidence must be relevant in order to be admissible. Fed. R. Evid. 402. Moreover, even relevant evidence may be excluded "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues,

or misleading the jury . . ." Fed. R. Evid. 403.

Here, the district court did not abuse its discretion in determining either that the state's attorney's decision not to prosecute Smith was not, in itself, relevant to the question of Smith's guilt for the instant offense or in determining that the state's attorney's testimony would have confused the issues or misled the jury.

Motions for Judgment of Acquittal

Smith argues that the district court erred in denying his motions for judgment of acquittal because the government failed to establish that he was in actual possession of a firearm and this court has never held that the conditions for constructive possession are met when a firearm is found in a motel room, as opposed to the defendant's home.

"We review the denial of a motion for judgment of acquittal de novo." United States v. Peters, 403 F.3d 1263, 1268 (11th Cir. 2005). Likewise, when such a motion challenges the sufficiency of the evidence, "we review the sufficiency of the evidence de novo, drawing all reasonable inferences in the Government's favor." Id. (quotation and citation omitted). We will uphold the district court's denial so long as "a reasonable fact-finder could conclude that the evidence established the defendant's guilt beyond a reasonable doubt." Id. (quotation and citation omitted). "Moreover, we are bound by the jury's credibility

11

determinations, and by its rejection of the inferences raised by the defendant." Id.

To establish criminal liability under 18 U.S.C. § 922(g)(1), the government must show: (1) Smith was a convicted felon; (2) Smith knew he was in possession of a firearm; and (3) the firearm affected or was in interstate commerce. United States v. Wright, 392 F.3d 1269, 1273 (11th Cir. 2004) (citation omitted). "The firearm need not be on or near the defendant's person in order to amount to knowing possession, . . . [and] [p]ossession can be shown by circumstantial as well as direct evidence." Id. "In order to establish constructive possession, the government must produce evidence showing ownership, dominion, or control over the contraband itself or the premises. . ." United States v. Smith, 591 F.2d 1105, 1107 (5th Cir. 1979) (quotation and citation omitted).

To establish that Smith knowingly possessed the firearm, the government presented the testimony of both Chiahsin Chen, the owner of the Motel 7, and Boston. Chen testified that Smith was the registered occupant of the motel room between October 15, 2003 and January 1, 2004. Boston testified that she lived with Smith in the motel room for a short period, during which she saw Smith carry a gun, which he hid under the bed while in the motel room. Boston testified that the gun she saw Smith carrying matched that which Martin discovered in Smith's motel room. Although Smith questions Boston's credibility, credibility

determinations are the exclusive province of the jury. <u>United States v. Calderon</u>, 127 F.3d 1314, 1325 (11th Cir. 1997). In light of the government's evidence, the district court did not err in denying Smith's motion for judgment of acquittal because the government presented sufficient evidence for a reasonable fact-finder to conclude that he was guilty of the offense beyond a reasonable doubt.

<u>Sentencing Smith as Armed Career Criminal</u>

Finally, Smith argues that the district court erroneously sentenced him as an armed career criminal because the government failed to establish that his cocaine conviction was punishable by a term of at least ten years.[4]

We review <u>de novo</u> whether a conviction is a serious drug offense within the meaning of 18 U.S.C. § 924(e). <u>United States v. Wilkerson</u>, 286 F.3d 1324, 1325 (11th Cir. 2002). The Armed Career Criminal Act ("ACCA") provides that a person who violates 18 U.S.C. § 922(g) by having three prior convictions for a "violent felony" or "serious drug offense" shall be imprisoned for not less than 15 years. 18 U.S.C. § 924(e). The ACCA defines a serious drug offense as that "involving manufacturing, distributing, or possessing with intent to manufacture or

---

[4] To the extent that Smith is arguing that the district court should have submitted his prior convictions to a jury for determination of whether they qualified him for a sentence enhancement under ACCA, his argument is meritless. Courts may look to charging documents to make that determination, and the charging document relating to Smith's 1993 cocaine convictions indicates that he committed a serious drug offense. <u>See</u> <u>Taylor v. United States</u>, 495 U.S. 575, 599 (1990) (providing for courts' consideration of charging documents, among other things); <u>Shepard v. United States</u>, 544 U.S. 13, 16, 27 (2005) (same).

13

distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii).

Because Smith did not argue in the district court that the cocaine offenses did not carry a maximum sentence of 10 years' imprisonment or more, we review his argument for plain error, which requires an: "(1) error, (2) that is plain, and (3) that affects substantial rights . . . [and] (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." United States v. Shelton, 400 F.3d 1325, 1328-29 (11th Cir. 2005) (quotation and citations omitted).

The charging document relating to Smith's 1993 cocaine convictions indicates that Smith was charged with a second degree felony, carrying a maximum term of 15 years' imprisonment under Florida law at the time of his conviction. Accordingly, the district court did not err in classifying the 1993 convictions as involving a serious drug offense.

For the foregoing reasons, the district court is **AFFIRMED.**